Good morning, Your Honors, and may it please the Court. Taylor Owings on behalf of the student appellants in this case, I'd like to reserve two minutes for rebuttal. Yes. Your Honors, the District Court erred in this case by misinterpreting and misapplying the requirements for intervention as of right under Rule 24a. The purpose of Rule 24a is to ensure that parties like the students, who are the real beneficiaries of Harvard's right to consider race in admissions, aren't excluded from participating in the litigation that will determine their fate. You need to have a, your clients need to have a protectable interest that Harvard won't adequately protect. That's the key issue here, isn't it? That's correct, Your Honor. The protectable interest is the key. It's not the question of whether their interest is a legal right. The concreteness of the intervener's interest has been the touchstone of this Court's precedent on intervention as of right. And what I'm concerned about is whether it is, I understand what your interest is, but whether it is a protectable one seems to be the potential problem for you. And a way to crystallize it, or at least pose a question, is suppose you're allowed to intervene, and then the next day, the other two parties announced they were settling the case. And the plaintiff was dismissing it, and it was gone. What could you do about that? Your Honor, that's precisely the concern that we have in this case. One of the many concerns. I'm saying, let's assume you've intervened. How could you stop them from settling? If we were parties to the case, Your Honor, if we were acting as defendants in the case, we would be required parties to a settlement. No, what says that? What rule says that? The plaintiff comes in the next day and announces to the Court, I'm dismissing the case. And then if you would, how would you oppose that when the other party says, yes, we're happy to dismiss it? What interest of yours would you say to the Court requires that the litigation go forward, even if the other parties are happy to go home? Your Honor, this was precisely the fact pattern at issue in Mosbacher, where the applicants for intervention came to the Court on a proposed consent decree. And the proposed consent decree was actually one of the pieces of evidence that showed that the defendant was not adequately representing the party's interest. So in that instance, the students would have a seat at the table to discuss the particular settlement and the right of Harvard to retain discretion in settling, or excuse me, and in considering race and admissions. If we're talking about, as you just said, the right of Harvard, then we would then be asking with respect to that right, why isn't Harvard going to protect it? I'm positing to you a scenario where Harvard has said, let's say they say we're going to drop considering race in the admissions process. As I read your brief, you don't point to any legal basis that you would have to say to the Court, even though Harvard is willing to drop consideration of race, it must not do so. And the Court can require it not to do so. Unless you could say that, it's hard to me, hard to see how you have a protectable interest. I understand you have an interest. Your Honor, the issue here is the fact that the concreteness of the student's interest is in Harvard's discretion to consider race. But we're not talking about concreteness, we're talking about protectability. What is it you could say to the Court that would allow the Court to say, Harvard, even though you're willing to drop consideration of race and go away, you can't do so? Your Honor, the reason the Court would say that is to preserve Harvard's discretion to consider race over time. But Harvard has said we don't want that discretion. Your Honor, Harvard would not be, so Harvard at a single point in time would have the, could bind itself as the future of the applicants for intervention here and its future boards and future interests that would come into play. If it were to bind itself at that point in time, as to the discretion it might have later to reconsider its use of race in admissions, that would bind not only Harvard but the student's interests going forward. The protectability of the student's interest is an issue that this Court has addressed in, the protectability of a discretionary interest is an issue that this Court has addressed both in Mosbacher and in Daggett, where the interest at issue was the government's discretion to enact whatever policy it had already enacted. The applicants for intervention were applying to defend the government's discretion to enact that policy or another policy at different points in time. So this Court has a history of granting intervention to applicants whose interest is dependent  on their discretion. As to the adequacy of Harvard's ability to represent the students, the District Court erred in this case by holding the bar for intervention too high and by creating a burden for the students that simply does not exist in the law. The District Court essentially acknowledged that Harvard would be unwilling to raise important defenses of its right to consider race in admissions when it acknowledged that the students would have to rely on the plaintiff to develop evidence as to Harvard's other admissions criteria, legacy, early action, and the SAT. In acknowledging that Harvard would not develop that evidence and would not admit to the deprimental effect that those policies have on its diversity goal, it essentially found the facts necessary to grant students intervention as of right on the adequacy of interest requirement. Harvard has nowhere in the briefing refuted the assertion that it would not defend, excuse me, the deprimental effect of its legacy policy, early action, and the SAT. And the District Court committed legal error by holding that the plaintiff would be a sufficient representative for the students in developing that evidence. The District Court also erred by holding that the student's amicus status would be sufficient to grant it the ability to participate that it needs to make the legal arguments that are required. Again, in acknowledging the fact-specific evidence the students would need to demonstrate that Harvard's policy is at issue here, the District Court essentially admitted that amicus status is insufficient. If you have no further questions. Thank you. May it please the Court. Excuse me. Patrick Strawbridge on behalf of Students for Fair Admissions. The standard review before this Court in this case is abuse of discretion. And the District Court's 22-page decision correctly set forth Rule 24a's requirements and applied them to the particular facts of this case. It's finding that the interveners could not meet two of the four requirements for mandatory intervention, and only one of them is sufficient to sustain the District Court's decision on this Court. It's important to recognize that the students retain substantial rights to participate in the briefing and trial below, and that it's more than sufficient participation for them to share their perspectives and legal arguments in defense of Harvard's use of race in its admissions decisions. I think the important point to remember is that not only were they granted rights to submit briefing, but they also were granted the rights to participate in oral argument, to submit declarations, to assist Harvard in the preparation of its case, and if the comes about, the District Court reserved the right to reconsider the extent to which they may actually participate in trial. This Court has made clear that the application of Rule 24a2 is a series of judgment calls, a balancing of factors that arise in highly idiosyncratic factual settings, and the District Court's decision here properly applied the 24a2 standard to the facts before it. I wanted to just start for a second on the protectable interest point that Judge Chiata raised. We think that the District Court's finding on this decision is entirely correct, and Judge Chiata raises the real prospect that without any kind of protectable legal interest that would permit them to continue the case in the event that SFFA and Harvard were somehow to resolve their dispute, the Court would be presented with a serious question as to the standing or the ability of the case to continue at that point. How would that analysis apply to our holding in Mosbacher? I don't think that Mosbacher takes a different tack. Mosbacher itself acknowledges that, first of all, that the hurdle for 24a2 intervention may be different when you're talking about government action because of the wide variety of folks that might be impacted by government action. But apart from that, this Court has always indicated that whether or not you actually have to have Article III standing to justify Rule 24a2 intervention, you need to have something very, very close to it. And Schutte, which obviously postdates a lot of the decisions cited by the appellants in the context of higher education admissions, makes clear that there is no such protectable interest anymore for the students. Adequate representation is an independent basis on which to affirm the District Court's decision. And of course, there's no suggestion the District Court was entirely correct to find that Harvard can adequately represent the interests of the students in this case. Harvard intends to mount a full and vigorous defense. I'm sure that Mr. Waxman will reiterate that intention when he stands before you. And we think that the District Court's decision entirely applied the presumption that because Harvard shares the same desired outcome of the litigation as the students, that Harvard can adequately represent their interests. I do think that the students overstate, or I should say understate, their burden on this point. They repeatedly cite to this Court's implication of the Trobovich standard of review as minimal on adequate representation. But I think that that case is quite clear, that the minimal standard only applies when the parties do not share the same desired outcome as they do here. There's no other questions. I'm happy to rest. May it please the Court. Let me start, Judge Chiodo, with your question about Mosbacher. The distinction in Mosbacher is that the fishing groups, the commercial fishing interests that sought to intervene claimed a legal right to be protected from the fishing restrictions that would have been the subject of a consent decree. And that's what distinguishes the students in this case from the fishing interests. The students here have a profound interest, the same profound interest that Harvard has in maintaining Harvard's ability to consider race as part of a holistic admissions process in order to achieve campus diversity that will maximize their educational experience and prepare them for leadership. And Harvard has absolutely no intention whatsoever of settling this case. We will defend our legal ability to do exactly what we're doing to the maximum extent of the law. The president of Harvard only two months ago reconfirmed that the issue at stake here is central and fundamental to everything that Harvard stands for. But if we decided, in fact, to change and decide for the first time in at least 50 years not to consider race in our holistic admissions process, unlike the interveners in Mosbacher and the interveners in Daggett that were referenced, the students' interest, however profound, is not protectable. There's no question that Harvard could decide, however unlikely it is, that it's no longer going to consider race. And it's going to use the same admissions process that Caltech uses, which is it's going to try and find the 1,600 most brilliant engineers, no matter what their cultural background is, no matter what other factors they bring. And we think that's an important distinction in this case. The students are, as I understand it, are arguing that they should be allowed to intervene as full parties. And the students have not appealed the denial of permissive intervention. And they have not suggested, even to Judge Burroughs, that the contours of the amicus plus participation is in any way inappropriate. If they think that it's unduly restrictive, of course they have recourse to the district judge to expand what they do. Has the case proceeded at pace while this appeal is pending? Well, the case has been partially stayed during the pendency of both this appeal and the proceedings in Fisher versus the University of Texas, or Fisher II. So we have produced about 1,200 documents to the plaintiffs while this appeal has been pending. We have been directed to produce to them a database of student applications for a two-year period, which we will shortly do. And the district judge has said that she will hold a status conference promptly after this court decides in order to determine what further discovery should proceed while she awaits the Supreme Court's decision in Fisher II. And I think the problem with the students' argument of inadequacy, in addition to their burden of overcoming a presumption and establishing an abusive discretion, is that they want to justify Harvard's consideration of race on the basis of arguments that Harvard is not going to present. And specifically, they have an argument that Harvard should consider race in order to offset what they claim, in alignment with the plaintiffs in this case, are supposedly discriminatory effects of other admissions considerations, other factors that Harvard takes into account. That does not establish inadequacy for two interlocking reasons. First, under the Supreme Court's cases, whether, how, and why to pursue diversity is a matter of academic judgment that only Harvard can render. And in this court, as opposed to as participants on campus, the students' reasons why Harvard should be considering race are irrelevant. Secondly, to the extent that the students' legal premise is simply that the narrow tailoring prong of the strict scrutiny inquiry should consider every feature of Harvard's administration's process and what effects they may have, again, we agree. We think, as the students do, that the analysis of Harvard's holistic use of race-conscious admissions should take as a given that Harvard employs a variety of factors and considerations that it considers essential to further its educational goals. Unless the court has questions, we reserve the floor. Judge Chiodo, let me return to your question. The answer is that in the short term, there is nothing the students could do if the plaintiff and Harvard reached a settlement agreement. But they could continue in the litigation until the conclusion of it and secure for Harvard the right to consider race in admissions if it ever were to change its mind. So the prior cases in this circuit and in other circuits where the intervener was defending the discretionary right of an entity to choose the policy that it wanted are directly on point for that reason. If Harvard, for some reason, decided today to throw up its hands, the students would be here to secure that right for the future. How? I'm not sure what you mean, Judge. How would they secure that right? By continuing in the litigation, Your Honor. Post-settlement? Yes, Your Honor. The students would be defendants still against the plaintiffs. Plaintiffs would have left. They dismissed their case and went home. The issue here, OK, so in Mosbacher, the parties present a settlement agreement that the interveners can contend, Your Honor. So they can contend the entry of that settlement agreement and keep the litigation alive to secure the right going forward on behalf of the defendant. So are you saying if we look carefully at Mosbacher and Cotter, we'll find other cases in which the same phenomenon that I'm pointing out to you here would be present, that the intervening party, in fact, would have been able to do nothing had the other parties resolved the case, and yet we found intervention there? Before entering a settlement agreement, Your Honor, yes, that would be the proper time to allow intervention to protect their concrete interest. Thank you. OK, thank you both.